IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CSC LEASING CO.,
    Plaintiff,

v.
                                         Civil No. 3:24cv556 (DJN)

IMMUNICOM, INC.,
    Defendant.

## MEMORANDUM ORDER
### (Granting Motion for Default Judgment)

This matter comes before the Court on Plaintiff CSC Leasing Co.'s ("Plaintiff") Motion

for Default Judgment (ECF No. 8 ("Motion")), which moves the Court to enter default judgment

against Defendant Immunicom, Inc. ("Defendant") on the grounds that it failed to file responsive

pleadings or otherwise defend against the Complaint. For the reasons stated below, the Court

hereby GRANTS Plaintiff's Motion for Default Judgment (ECF No. 8).

## I.    BACKGROUND

### A.    Factual Background

At this stage, the Court must accept as true the facts set forth in the Complaint (ECF

No. 1 ("Compl.")). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Against this backdrop, the

Court accepts the following facts as alleged for purposes of resolving the instant Motion.

### 1.    The Master Lease

Plaintiff constitutes a Virginia corporation with a principal place of business in

Richmond, Virginia. (Compl. ¶ 2.) Defendant constitutes a Delaware corporation with a

principal place of business in San Diego, California. (*Id.* ¶ 3.) Plaintiff, as lessor, and

Defendant, as lessee, executed Master Lease Agreement No. 2020062 ("Master Lease") on June

25, 2020, for the lease of various items of personal property and equipment (the "Equipment"). (*Id.* ¶¶ 1, 9.) The Master Lease provides the terms as to various lease documents, including terms that "title to the Equipment shall at all times remain in [Plaintiff]" and that Defendant would "pay to [Plaintiff] as rental for the Equipment leased under each Schedule the Basic Rental set forth in such Schedule." (*Id.* ¶¶ 10, 12–13; ECF No. 1-1 ("Master Lease") §§ 2(b), 4(a).) The Master Lease also requires Defendant to "pay to [Plaintiff] an amount equal to all taxes" in connection with the lease documents, and states that Defendant "shall not obtain any title to the Equipment by virtue of the execution of this Master Lease." (Compl. ¶¶ 14–15; Master Lease §§ 4(b), 5(a).)

Section 3 of the Master Lease requires "written notice of [Defendant's] termination of each Schedule" at least three months prior to the Schedule's expiration; if Defendant does not submit timely written notice, the lease terms for the applicable Schedule extend for additional three-month periods at the "then existing Basic Rental . . . until terminated" or, at Plaintiff's option, can be terminated at the end of the original expiration or after any subsequent three-month period. (Compl. ¶ 16; Master Lease § 3.) Under the Master Lease, failure by Defendant to pay Basic Rental or other sums due for five or more days after written notice from Plaintiff constitutes an Event of Default. (Compl. ¶ 17; Master Lease § 11(a).) Upon an Event of Default, Plaintiff's rights and remedies include "proceed[ing] by appropriate suit action . . . to enforce payment and performance . . . or to recover . . . all damages and expenses that [Plaintiff] shall have sustained by reason of [Defendant's] default and in the enforcement of the Remedies." (Compl. ¶ 18; Master Lease § 12.)

Plaintiff can recover "all amounts due on or before the date [Plaintiff] . . . declared the applicable Schedule in default, plus, upon written notice from [Plaintiff]" it "may accelerate the

2

obligations of [Defendant] under the Schedule(s) in default." (Compl. ¶ 20; Master Lease § 12.) In that scenario, Defendant must pay "the aggregate amount of all unpaid Basic Rentals that, absent a default, would have been payable thereunder for the full term of such Schedule plus any other obligations due or accrued," including interest accruing from the date of default until paid. (Compl. ¶ 20; Master Lease § 12.)  Defendant also must pay either the value of the leased Equipment or return the Equipment to Plaintiff, at Defendant's expense. (Compl. ¶ 20; Master Lease § 12.)  Further, Defendant stands liable "for all costs, fees, interests, and expenses (including, without limitation, reasonable attorneys' fees) incurred by [Plaintiff] . . . in enforcing any of [its] rights and Remedies set forth herein." (Compl. ¶ 21; Master Lease § 12.)

Pursuant to the Master Lease, the parties executed five Lease Schedules. (Compl. ¶ 22.) Schedule A, executed on November 2, 2020, established a thirty-six-month lease with basic monthly rent of $4,834.41, inclusive of applicable taxes. (*Id.* ¶¶ 23–24.)  Schedule A expired on November 30, 2023, Defendant has never provided written notice to terminate Schedule A, Plaintiff has exercised its option to renew successive three-month terms, and, as of the filing of the Complaint, Defendant owes no less than $106,357.02, including past due basic rent, prospective rent and certain taxes and charges. (*Id.* ¶¶ 25–28; ECF No. 1-2.)  Schedule B, executed on February 3, 2021, followed the same structure, with a thirty-six-month term that expired on February 29, 2024, and basic monthly rent of $3,674.97, inclusive of taxes. (Compl. ¶¶ 29–31.)  Defendant has never provided written notice to terminate Schedule B, Plaintiff has exercised its option to renew successive three-month terms, and, as of the filing of the Complaint, Defendant owes no less than $84,524.31, including past due basic rent, prospective rent and certain taxes and charges. (*Id.* ¶¶ 32–34; ECF No. 1-3.)  Schedule C, executed on November 2, 2021, also provides for a thirty-six-month lease with monthly rent of $3,891.00,

3

inclusive of taxes. (Compl. ¶¶ 35–36.) As of the date of the Complaint's filing, the aggregate remaining, prospective rent amounted to $7,782.00, and Defendant owes no less than $97,275.00 in total on Schedule C. (*Id.* ¶¶ 37–38; ECF No. 1-4.)

Schedule D, executed by the parties on July 1, 2022, provides for a thirty-six-month lease and monthly rent of $12,681.09, including taxes. (Compl. ¶¶ 39–40.) Defendant owes a total of no less than $405,794.88 under Schedule D, including past due basic rent, taxes and charges, and $114,129.81 in aggregate remaining, prospective rent. (Compl. ¶¶ 41–42; ECF No. 1-5.) Lastly, Schedule F, executed on June 1, 2023, provides for a thirty-six-month lease and monthly rent of $8,810.51.[1] (Compl. ¶¶ 43–44.) Defendant owes a total of no less than $329,905.80 under Schedule F, including past due basic rent, taxes and charges, and $183,281.00 in aggregate remaining, prospective rent. (Compl. ¶¶ 45–46; ECF No. 1-6.)

For the Equipment leased under Schedules A, B, C, D and F, Defendant executed Acceptance Certificates, in which it certified that each item had been "inspected," "installed . . . in good working order" and "accepted by [Defendant] for leasing under all provision[s] of the [Master] Lease." (Compl. ¶¶ 47–48; ECF No. 1-7 at 2–7.) Defendant also certified that it was "obligated to pay the rentals and all other sums provided for in the Lease with respect to the Equipment." (Compl. ¶¶ 47–48; ECF No. 1-7 at 2–7.)

On December 1, 2020, the parties also executed an Equipment Procurement Agreement ("EPA"), by which Plaintiff would lease additional Equipment to Defendant during an interim

---

[1]    Plaintiff asserts that Paragraph 44 of the Complaint "inadvertently states that the amount of monthly rent due and owing is '$8,810.51 per month, including certain taxes.'" (ECF No. 10 ("Supp") at 4 n.3.) However, that amount did not include applicable taxes, and Plaintiff contends that $9,164.05 stands as the proper figure. (*Id.*) Because Plaintiff otherwise properly used the tax-inclusive amount in its aggregate damages calculations in the Complaint — and because Plaintiff's Vice President of Asset Management affirms that all figures submitted "are true and correct" — the Court finds that $9,164.05 constitutes the appropriate basic monthly rental amount under Schedule F and will utilize that figure in its analysis. (ECF No. 10-2 at 1.)

Accumulating Period — before the parties' execution of the final, closed-term Lease Schedules — in exchange for interim, accumulating monthly rent. (Compl. ¶¶ 49–52; ECF No. 1-8.) Before execution of Schedule F, Plaintiff acquired such Equipment, at Defendant's direction, to lease during an Accumulating Period. (Compl. ¶ 54.) Pursuant to the EPA, the parties entered into thirteen Accumulating Schedules between January 2022 and May 2023, with rent due on a monthly basis. (*Id.* ¶¶ 55–56; ECF No. 1-9.) Plaintiff alleges that, as of the date of the Complaint, Defendant owes no less than $68,046.49, including past due, basic accumulating rent and certain taxes and charges, under the Accumulating Schedules. (Compl. ¶ 57.)

Plaintiff alleges that Defendant has failed to pay the amounts due under the lease documents, including basic monthly rent under the Lease Schedules and accumulating rent under the Accumulating Schedules. (*Id.* ¶ 60.) On May 1, 2024, Plaintiff sent Defendant a notice of default, but Defendant failed to respond or cure the defaults. (*Id.* ¶¶ 61–62; ECF No. 1-10.) Plaintiff then sent a notice of acceleration and continuing default on June 3, 2024, but Defendant failed to respond to that notice as well. (Compl. ¶¶ 63–64; ECF No. 1-11.) Defendant remains in possession of the leased Equipment, has failed to cure its defaults and stands in default under both the Master Lease and EPA. (Compl. ¶¶ 65–67.) In its Complaint, Plaintiff alleges that Defendant owes a total of no less than $1,146,152.81, including $786,710.69 in aggregate past due, monthly rent in connection with all Lease Schedules and Accumulating Schedules; $305,192.81 in prospective, aggregate remaining rent under the Lease Schedules; $51,741.81 in late fees; and $2,507.50 in legal fees and expenses, as of August 1, 2024.[2] (*Id.* ¶ 68.)

---

[2]    As the Court will address in greater detail below, Plaintiff has adjusted its total monetary damages request downward to $1,140,439.56. (Supp. at 2.) To resolve the instant Motion, the Court utilizes this lower requested total as the operative monetary damages figure. *Cf. In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("[A] default judgment may not exceed in amount that prayed for in the demand for judgment.").

**B.    Procedural History**

On August 2, 2024, Plaintiff filed its Complaint (ECF No. 1), asserting three counts based on the above allegations. Count I alleges a claim for breach of contract, while Count III alleges, in the alternative to Count I, a claim for unjust enrichment. Count II brings a claim for detinue. On August 14, 2024, Plaintiff filed proof of an executed summons against Defendant, indicating that Plaintiff's agent effectuated service of process against Defendant on August 13, 2024. (ECF No. 5.) Because Defendant failed to meet the September 3, 2024 deadline to answer or otherwise respond to the Complaint, Plaintiff filed a Request for Entry of Default against Defendant on September 5, 2024. (ECF No. 6.) The Clerk issued an Entry of Default against Defendant on September 12, 2024. (ECF No. 7.) Subsequently, on September 24, 2024, Plaintiff filed the instant Motion for Default Judgment. (ECF No. 8.) Then, at the Court's direction, Plaintiff filed its Verified Supplement to Motion for Default Judgment ("Supplement") on November 25, 2024. (ECF No. 10.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the two-step process for default judgment. First, under Rule 55(a), the Clerk of the Court must enter default against a party when that party has "failed to plead or otherwise defend" its case. Fed. R. Civ. P. 55(a). Then, Rule 55(b) provides that the Clerk may enter default judgment if the plaintiff alleges a claim for a "sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for default judgment. Fed. R. Civ. P. 55(b)(2).

Courts enter default judgment sparingly and instead prefer to decide cases on the merits. *See, e.g., Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953–54 (4th Cir. 1987) (setting aside default judgment entered against blameless party); *United States v. Moradi*, 673 F.2d 725, 727–

6

28 (4th Cir. 1982) (same). To that end, although a defaulting defendant admits all well-pled factual allegations in the complaint, the Court must independently determine whether those allegations "support the relief sought." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In evaluating a motion for default judgment, the Court may conduct a hearing to determine the proper sum of damages or investigate any other matter. Fed. R. Civ. P. 55(b)(2). However, "[i]f the damages are ascertained, determined, and fixed, or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," the Court need not conduct a hearing. *Banilla Games, Inc. v. AKS Virginia, LLC*, 2022 WL 16747288, at *2 (E.D. Va. Nov. 7, 2022) (quoting *Eason v. Merrigan*, 2004 WL 903756, at *1 (D. Md. Apr. 28, 2004)). "Damages must be proven, and a court maintains discretion over how the amount of damages may be appropriately shown." *Transp. Dist. Comm'n of Hampton Roads v. U.S. Workboats, Inc.*, 2021 WL 8445262, at *4 (E.D. Va. Sept. 17, 2021). In all circumstances, "a default judgment may not exceed in amount that prayed for in the demand for judgment." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

## III.    ANALYSIS

The Court will first determine whether Plaintiff satisfied the procedural requirements for default judgment and then assess the merits of its claims.

### A.    Procedural Requirements

As an initial matter, the Court finds that it has subject matter jurisdiction to adjudicate this case under diversity jurisdiction. 28 U.S.C. § 1332(a) (stating that district courts shall have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000). In the instant case, Plaintiff constitutes a Virginia corporation with its principal place of business in Virginia. (Compl. ¶ 2.) Defendant constitutes a Delaware

7

corporation, with a principal place of business in California. (*Id.* ¶ 3.) Plaintiff seeks monetary damages in the amount of $1,140,439.56. (Supp. at 2.) As a result, the Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

Plaintiff satisfied the procedural requirements for entry of default, because Defendant has been properly served yet wholly failed to plead or otherwise defend the case. *See Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (affirming default judgment based on defendants' failure to participate in litigation). Federal Rule of Civil Procedure 12(a) requires that a defendant serve an answer within twenty-one days of being served with the summons and complaint. Fed. R. Civ. P. 12(a). Plaintiff served Defendant through its registered agent in Delaware on August 13, 2024. (ECF Nos. 5, 6-1.) Defendant then failed to answer or otherwise respond within the requisite period; therefore, the Clerk entered default on September 12, 2024. (ECF No. 7.) Thus, Plaintiff clears Rule 55(a)'s procedural threshold.

### B.    Liability

Having found that Plaintiff's Motion for Default Judgment qualifies as procedurally sound, the Court must next consider whether the allegations in the Complaint support the relief that Plaintiff seeks. *Ryan*, 253 F.3d at 780. In making that determination, the Court must assume the truth of all well-pled factual allegations, except those relating to unascertainable amounts of damages. *Id.* The Court assesses each of Plaintiff's claims in turn, ultimately finding that it sufficiently pleads claims for breach of contract (Count I) and detinue (Count II). Because the Court finds that Plaintiff states a claim for breach of contract and evaluates Plaintiff's damages under that claim, the Court will not assess Plaintiff's alternative claim for unjust enrichment (Count III). *See Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 827

8

(E.D. Va. 2013) (noting that although Plaintiff can plead inconsistent theories under Federal Rule of Civil Procedure 8(d)(2), it "cannot recover for breach of contract and unjust enrichment").

### 1.    Breach of Contract

To support a claim for breach of contract in Virginia, a plaintiff must allege the following three elements:  "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).  The Court finds that Plaintiff's allegations within the Complaint satisfy each of these three elements.

First, Plaintiff alleges a legally enforceable obligation that Defendant had to Plaintiff through the Master Lease and the various lease documents, including the Lease Schedules, EPA and Accumulating Schedules.  As of June 25, 2020, both parties executed the Master Lease, which states that it "shall be governed and construed in all respects by the laws of the Commonwealth of Virginia." (Compl. ¶¶ 9, 11; Master Lease § 15(g).)  The Master Lease provides the controlling terms as to the parties' agreement, including that Defendant shall pay rent to Plaintiff for any Equipment leased at the basic rates set forth in each Schedule.  (Compl. ¶¶ 10, 13; Master Lease § 4(a).)  Further, Defendant agreed to pay "an amount equal to all taxes" in connection with the lease documents.  (Compl. ¶ 14; Master Lease § 4(b).)  Defendant also agreed that Plaintiff has a right to accelerate the remaining amounts due under any Schedule that enters default due to Defendant's failure to meet its obligations.  (Compl. ¶ 19; Master Lease § 12.)  In accordance with the Master Lease, the parties executed closed-term Lease Schedules A, B, C, D and F, as well as thirteen interim Accumulating Schedules, under each of which Defendant agreed to pay a specified amount to Plaintiff for leased Equipment.  (ECF Nos. 1-2 through 1-9.)

Second, Plaintiff alleges that Defendant breached its contractual obligations.  Plaintiff states that Defendant "has failed to pay to [Plaintiff] the amounts due and owing under the Lease Documents, including basic, monthly rent due under the Lease Schedules and accumulating rent under the Accumulating Schedules." (Compl. ¶ 60.)  When Plaintiff sent an initial notice of default to Defendant on May 1, 2024, Defendant failed to respond or cure the outstanding defaults. (*Id.* ¶¶ 61–62; ECF No. 1-10.)  Defendant also failed to respond to a June 3, 2024 notice of acceleration and continuing default, in which Plaintiff informed Defendant that it had, in accordance with the Master Lease, accelerated the remaining amounts due. (Compl. ¶¶ 63–64; ECF No. 1-11.)  Defendant continues to fail to cure its defaults and remains in default under the Master Lease. (Compl. ¶ 66–67; Master Lease § 11.)  Thus, the Court finds that the Complaint sufficiently pleads that Defendant breached its contractual obligations through its failure to make rental payments or cure its defaults.

Third, and finally, Plaintiff alleges injury stemming from Defendant's breaches.  While the Court will address Plaintiff's damages in greater detail below, the Court notes that the Complaint alleges specific losses tied to Defendant's breach of each closed-term Lease Schedule. (*Id.* ¶¶ 28, 34, 38, 42, 46.)  Plaintiff also alleges specific damages stemming from Defendant's failure to pay in accordance with the interim Accumulating Schedules. (*Id.* ¶ 57.)  Further, Plaintiff alleges damages for late fees and legal fees and expenses. (*Id.* ¶ 68.)  These allegations sufficiently show that Plaintiff suffered damages as a result of Defendant's breach.

Accordingly, Plaintiff properly pleads a claim for breach of contract, and the Court GRANTS Plaintiff's Motion for Default Judgment against Defendant as to Count I.

## 2.    Detinue

To recover in detinue under Virginia law, "the plaintiff must establish (1) that plaintiff has a property interest in the thing sought to be recovered, (2) that plaintiff has the right to immediate possession of the property, (3) that the property is capable of identification, (4) that the property is of some value, and (5) that defendant had possession at some time prior to the institution of the detinue action." *United States v. Moffitt, Zwerling & Kemler, P.C.*, 875 F. Supp. 1190, 1198 (E.D. Va. 1995). "If successful in detinue, the plaintiff may recover possession of the property and any resulting damages." *U.S. Bank Nat'l Ass'n v. 3D Facility Servs., Inc.*, 2021 WL 5234884, at *8 (E.D. Va. Oct. 19, 2021), *report and recommendation adopted*, 2021 WL 5206680 (E.D. Va. Nov. 9, 2021).

Here, the Complaint first establishes that Plaintiff has a property interest in all leased Equipment, as the Master Lease states that "title to the Equipment shall at all times remain in [Plaintiff], and [Defendant] shall acquire no interest other than a leasehold interest." (Compl. ¶ 12; Master Lease § 2(b).) The Master Lease further states that "[t]he Equipment shall at all times remain the property of [Plaintiff] . . . and [Defendant] acknowledges and agrees that it does not and shall not obtain any title to the Equipment by virtue of the execution of this Master Lease or by payment or performance hereunder." (Compl. ¶ 15; Master Lease § 5(a).) Because Defendant defaulted on its payments, Plaintiff also has an immediate right to possess the Equipment, which remains its "sole property." (Compl. ¶ 75.)

As to the remaining elements, the leased Equipment stands capable of identification, as the various lease documents particularly describe each leased item. (*See* ECF No. 1-7 (Acceptance Certificates identifying Equipment leased to Defendant under Lease Schedules A, B, C, D and F); ECF No. 1-9 (Accumulation Schedules identifying Equipment leased during

11

Accumulating Period).) The Equipment also clearly has value, as reflected in Defendant's agreement to pay specified amounts to lease each item. (*See* ECF Nos. 1-2 through 1-6 (Lease Schedules identifying Equipment and basic monthly rental to be paid for each lease); ECF No. 1-9 (Accumulating Schedules identifying Equipment and rent to be paid).) Finally, Defendant possessed the Equipment before the filing of this action. (Compl. ¶¶ 77–78 (stating that Defendant "took possession of the Leased Equipment," which Defendant "continues to retain").)

As a result, Plaintiff sufficiently alleges an action in detinue under Virginia law and the Court GRANTS Plaintiff's Motion for Default Judgment against Defendant as to Count II.

### 3.    Damages

The Court must next determine the amount of damages to award Plaintiff. Under Virginia law, a plaintiff carries the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." *Shepherd v. Davis*, 574 S.E.2d 514, 524 (Va. 2003). A court need not conduct a hearing if "the damages are ascertained, determined, and fixed, or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Banilla Games, Inc. v. AKS Virginia, LLC*, 2022 WL 16747288, at *2 (E.D. Va. Nov. 7, 2022) (quoting *Eason v. Merrigan*, 2004 WL 903756, at *1 (D. Md. Apr. 28, 2004)). In all circumstances, "a default judgment may not exceed in amount that prayed for in the demand for judgment." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

Upon review of the Complaint and the attached contractual documents, the Motion and Plaintiff's Supplement, as well as the affidavits of Plaintiff's counsel and Plaintiff's Vice President of Asset Management Mason Corey, the Court finds that Plaintiff has met its "burden of proving with reasonable certainty the amount of damages." *Shepherd*, 574 S.E.2d at 524. As

12

articulated in greater detail above, the Master Lease contains various provisions entitling

Plaintiff to specific categories of damages in the event of Defendant's breach. (Master Lease

§ 12.) The Complaint then outlines how much Defendant owes to Plaintiff for (1) past due, basic

rent and prospective rent under Schedules A, B, C, D and F, (2) past due, accumulating rent

under the Accumulating Schedules, (3) late fees and (4) legal fees and expenses. (Compl. ¶ 68.)

Seeking further clarification as to these requested amounts, the Court issued an Order (ECF No.

9) directing Plaintiff to submit the Supplement, which it timely filed (ECF No. 10). *See Transp.

Dist. Comm'n of Hampton Roads v. U.S. Workboats, Inc.*, 2021 WL 8445262, at *4 (E.D. Va.

Sept. 17, 2021) ("[A] court maintains discretion over how the amount of damages may be

appropriately shown.").

### a.    Past Due, Basic Monthly Rent and Taxes

Schedules A, B, C, D and F set forth specific amounts due as basic rent on a monthly

basis for leased Equipment. (ECF Nos. 1-2 through 1-6.) Under the Master Lease, Plaintiff can

"recover all amounts due on or before the date [Plaintiff] . . . declared the applicable Schedule in

default." (Master Lease § 12.) Defendant must also pay Plaintiff "an amount equal to all taxes"

in connection with the Lease Schedules. (*Id.* § 4(b).) Plaintiff's Complaint identifies the

monthly rental amounts due under Schedules A, B, C, D and F, inclusive of applicable taxes.

(Compl. ¶¶ 24, 30, 36, 40, 44.)[3]

The Complaint seeks an aggregate total of $718,664.20 in past due, basic rent under

Schedules A, B, C, D and F. (*Id.* ¶ 68.) At the Court's direction, Plaintiff provided additional

---

[3]    As noted above, Plaintiff's Complaint inadvertently states that $8,810.51 constitutes the monthly rental amount under Schedule F. *See supra* note 1. Plaintiff asserts that $9,164.05 constitutes the accurate tax-inclusive monthly rental amount. (Supp. at 4 n.3.) Because Plaintiff otherwise uses the latter, inclusive rental amount throughout the Complaint, the Court finds $9,164.05 to be the proper Schedule F monthly total and utilizes this figure in its damages award.

detail in its Supplement to articulate how it calculated this aggregate amount.[4]  (Supp. at 4–5.)

Specifically, Plaintiff seeks the following in past due, basic monthly rent, inclusive of applicable

taxes: (1) $106,357.02 under Schedule A (monthly rent of $4,834.41 for twenty-two months); (2)

$84,524.31 under Schedule B (monthly rent of $3,674.97 for twenty-three months); (3)

$89,493.00 under Schedule C ($3,891.00 per month for twenty-three months); (4) $291,665.07

under Schedule D ($12,681.09 per month for twenty-three months); and (5) $146,624.80 under

Schedule F (monthly rent of $9,164.05 for sixteen months).  (*Id.*)  Plaintiff's Vice President of

Asset Management submitted an affidavit ("Corey Affidavit") confirming the truth and accuracy

of these figures.  (ECF No. 10-2 at 1.)  Because the Master Lease clearly allows for Plaintiff to

recover any unpaid basic rent and applicable taxes for the leased Equipment, the Court finds that

Defendant owes Plaintiff the aggregate past due rent total of $718,664.20 under Lease Schedules

A, B, C, D and F.  (Master Lease §§ 4(a), 4(b), 12.)

Plaintiff's Complaint also seeks $68,046.49 in past due, basic accumulating rent in

connection with the Accumulating Schedules.  (Compl. ¶ 68; ECF No. 1-9.)  In its Supplement,

Plaintiff states that it submitted eighteen invoices to Defendant between January 2022 and May

2023 for accumulating rent under the Accumulating Schedules.  (Supp. at 6.)  While Defendant

paid the first eight invoices in full, it only submitted partial payment for the ninth and then failed

to pay any amount on the remaining nine invoices.  (*Id.*)  Plaintiff's Supplement includes a table

that identifies the amount due in rent and applicable taxes pursuant to each invoice.  (*Id.*)

Because these unpaid, basic accumulating invoice balances constitute recoverable amounts under

the EPA and Master Lease, the Court finds that Defendant also owes Plaintiff $68,046.49 in past

---

[4]     Plaintiff also explained how applicable taxes were included within its damages
calculation.  (Supp. at 3–4.)

due, basic accumulating rent under the Accumulating Schedules. (ECF No. 1-8 ("EPA") ¶ 3; Master Lease §§ 4(a), 4(b), 12.)

### b.    Prospective Monthly Rent and Taxes

Plaintiff's Complaint additionally requests $305,192.81 in prospective rent due in connection with Lease Schedules C, D and F. (Compl. ¶ 68.) This total prospective rent amount includes the following: (1) $7,782.00 under Schedule C ($3,891.00 per month for two months); (2) $114,129.81 under Schedule D ($12,681.09 per month for nine months); and (3) $183,281.00 under Schedule F ($9,164.05 per month for twenty months). (*Id.* ¶¶ 37, 41, 45; Supp. at 5.) Pursuant to the Master Lease, Plaintiff has, "upon written notice," the right to accelerate the remaining amounts due under those Lease Schedules for which Defendant stands in default. (Master Lease § 12.) Plaintiff sent an initial notice of default to Defendant on May 1, 2024. (Compl. ¶ 61; ECF No. 1-10.) When Defendant failed to respond or otherwise cure the outstanding defaults, Plaintiff then sent Defendant a notice of acceleration and continuing default on June 3, 2024. (Compl. ¶¶ 62–63; ECF No. 1-11.) Defendant did not respond to the acceleration notice and remains in default. (Compl. ¶¶ 64–66.) Further, the Corey Affidavit confirms the truth and accuracy of the prospective rent figure. (ECF No. 10-2 at 1.) Thus, the Court finds that, pursuant to the Master Lease's acceleration clause, Defendant owes Plaintiff $305,192.81 for prospective rent under Lease Schedules C, D and F. (Master Lease § 12.)

### c.    Late Fees

Under the Master Lease, Plaintiff also stands entitled to a late payment of "five percent (5%) of the past due balance from the date due thereof" for any rental payments not made within five days of their due dates. (Master Lease § 4(a).) The Complaint seeks aggregate late fees of $51,741.81. (Compl. ¶ 68.) In its Supplement, Plaintiff states that the Complaint used an

15

incorrect method to calculate the late payment total. (Supp. at 6–7.) After modifying and adjusting its calculation method, Plaintiff now seeks late fees in the amount of $43,626.06. (*Id.* at 7.) Plaintiff's Supplement includes a table that (1) identifies the balance for each monthly invoice sent to Defendant between September 2022 and August 2024, and (2) calculates the corresponding late fee amount based on each monthly balance. (*Id.*) Because the Master Lease clearly allows for recovery of late fees, and because Plaintiff's adjusted request falls below its initial request in the Complaint, the Court finds that Defendant owes $43,626.06 to Plaintiff in late fees. *See In re Genesys Data Techs., Inc.*, 204 F.3d at 132 (noting that "a default judgment may not exceed in amount that prayed for in the demand for judgment").

### d.      Legal Fees and Expenses

The Master Lease entitles Plaintiff to recover from Defendant "all costs, fees, interests, and expenses (including without limitation, reasonable attorneys' fees) incurred by [Plaintiff] . . . in enforcing any of [its] rights and Remedies." (Master Lease § 12.) At the time of the Complaint's filing, Plaintiff sought $2,507.50 in legal fees and expenses. (Compl. ¶ 68.) In the instant Motion, Plaintiff seeks an updated total of $4,910.00 for fees and expenses. (ECF No. 8 at 2.) Plaintiff's counsel states in an affidavit that this amount includes (1) $405.00 for the Court's filing fee and (2) $4,505.00 in attorney's fees (10.6 hours at an hourly rate of $425.00). (ECF No. 8-2 at 2.) Plaintiff's counsel states that the requested fees "are reasonable and customary in the Richmond, Virginia market for the work performed, which work is necessary and appropriate for obtaining this judgment." (*Id.*) Upon review of Plaintiff counsel's affidavit and the materials in this case, the Court agrees that the fee request constitutes a reasonable amount for the work performed. *See Banilla Games, Inc.*, 2022 WL 16747288, at *5 (reviewing

16

affidavit and finding attorney's fee request for $14,112.80 reasonable).  Accordingly, the Court finds that Defendant owes Plaintiff $4,910.00 in fees and costs pursuant to Master Lease § 12.

### e.    Pre-Judgment and Post-Judgment Interest

Lastly, in the Complaint, Plaintiff seeks pre-judgment and post-judgment interest. (Compl. ¶ 73; Supp. at 8.)  Under the Master Lease, Plaintiff stands entitled to "interest accruing at the maximum rate allowed by law from the date of the default to the date of payment." (Master Lease § 12.)  Defendant failed to respond or otherwise cure its defaults after Plaintiff sent the notice of acceleration on June 3, 2024.  (Compl. ¶¶ 64–66.)  Accordingly, Plaintiff can recover any interest associated with its efforts to enforce its contractual rights under the Master Lease, beginning on June 3, 2024.

Under Virginia law, pre-judgment interest can be recovered "at the rate lawfully charged on [a] contract, or at six percent annually, whichever is higher."  Va. Code Ann. § 6.2-302.  The Master Lease does not specify an interest rate, so Virginia's six-percent rate applies.  Here, pre-judgment interest at a rate of six percent on the total requested damages amount of $1,140,439.56 yields a per diem amount of $187.47.  Therefore, as of December 18, 2024, the date of this Memorandum Order, Defendant owes Plaintiff $37,119.06 in pre-judgment interest. Furthermore, the Master Lease entitles Plaintiff to post-judgment interest.  (Master Lease § 12.) Pursuant to 28 U.S.C. § 1961, post-judgment interest shall be calculated at the applicable federal rate from the date of this Memorandum Order until Defendant has paid the judgment in full.

### IV.    CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Default Judgment (ECF No. 8) against Defendant.  Accordingly, JUDGMENT is hereby ENTERED in favor of Plaintiff and against Defendant in the amount of:

(1) total monetary damages of $1,140,439.56, representing the aggregate amount of the

following categories:  (a) $718,664.20 for past due rent as of August 1, 2024; (b)

$305,192.81 for prospective, accelerated rent as of August 1, 2024; (c) $68,046.49 for

unpaid, accumulating rent; (d) $43,626.06 for late fees; and (e) $4,910.00 in costs,

fees and expenses;

(2) pre-judgment interest from June 3, 2024, in the amount of $37,119.06;

(3) and post-judgment interest at the applicable federal rate pursuant to 28 U.S.C.

§ 1961(a), until Defendant pays the judgment in full.

Furthermore, the Court hereby ORDERS Defendant to timely return to Plaintiff, at

Defendant's sole expense, the leased Equipment referenced in the Complaint (ECF No. 1) and

further described in the Lease Schedules and Accumulating Schedules (ECF Nos. 1-2 through 1-

6, 1-9).  If Defendant does not return said Equipment to Plaintiff by January 15, 2025, the Court

hereby GRANTS Plaintiff the full authority to peacefully retake the leased Equipment and

ORDERS that Defendant reimburse Plaintiff for all reasonable fees associated with such

repossession.

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel

of record.

This case is now CLOSED.

It is so ORDERED.

_____/s/_____

David J. Novak
United States District Judge

Alexandria, Virginia
Dated:  December 18, 2024

18